# United States Court of Appeals

## For the First Circuit

———————————

No. 99-1877

FEDERAL DEPOSIT INSURANCE CORPORATION,
AS RECEIVER FOR EASTLAND SAVINGS BANK,
Plaintiff, Appellee,

v.

EDWARD KOOYOMJIAN; JOHN DICICCO,
Defendants, Appellants.

———————————

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Nathaniel M. Gorton, U.S. District Judge]
[Hon. Charles B. Swartwood III, U.S. Magistrate Judge]

———————————

Before

Torruella, Chief Judge,
Campbell, Senior Circuit Judge,
and Schwarzer,[*] Senior District Judge.

———————————

Jack R. Pirozzolo, with whom Willcox, Pirozolo & McCarthy, Professional Corporation was on brief, for appellants.
J. Scott Watson, Counsel, Appellate Litigation, Federal Deposit Insurance Corporation, with whom Ann S. DuRoss, Assistant General Counsel, Robert D. McGillicuddy, Supervisory Counsel, Roberta H. Clark, Counsel, Gregory E. Gore, Counsel, and Frank M. Cadigan, Senior Attorney, Federal Deposit Insurance Corporation, were on brief, for appellee.

———————————

[*] Of the Northern District of California, sitting by designation.

_____

July 21, 2000
_____

**SCHWARZER, <u>Senior District Judge</u>**.  Defendants Edward Kooyomjian and John DiCicco appeal a summary judgment in favor of the Federal Deposit Insurance Corporation (FDIC), the receiver of Eastland Savings Bank (Eastland).  The district court had jurisdiction under 12 U.S.C. § 1819(b)(2)(B) and we have jurisdiction under 28 U.S.C. § 1291.

## FACTUAL BACKGROUND

In 1987, Kooyomjian took out a construction loan of some $3 million from Eastland to develop a condominium complex (the Project) in Worcester, Massachusetts.  Kooyomjian signed a promissory note (the Note), which DiCicco personally guaranteed (the Guaranty).  The Note was secured by a first mortgage on the Project.  Kooyomjian ultimately defaulted on the loan, and Eastland instituted this action in Massachusetts Superior Court in October 1989 to enforce the Note and the Guaranty and to foreclose on the mortgage.  Defendants answered and asserted a counterclaim for damages, alleging: (1) breach of contract (Counts I and II) based on Eastland's alleged failure to honor oral promises to offer favorable end-loan financing to prospective buyers of units in the Project; (2) negligent misrepresentation (Count III); and (3) negligence (Count IV) based on Eastland's alleged mismanagement of the Project after Kooyomjian defaulted on the loan.

FDIC was appointed the receiver for Eastland in December 1992.  By then, Eastland had obtained on account of the deficiency on the Note: (1) a judgment against DiCicco for some $1.3 million on the

-3-

Guaranty; and (2) an allowance of its claim of some $1.1 million in Kooyomjian's Chapter 7 bankruptcy case.[1] Defendants' counterclaims were still pending. On the same day it was appointed receiver, FDIC entered into an Insured Deposit Purchase and Assumption Agreement (the P & A Agreement) with Fleet National Bank (Fleet), assigning to Fleet most of Eastland's assets, including the Loan, while retaining most of Eastland's non-deposit-related liabilities, including defendants' counterclaim against Eastland. In March 1993, FDIC removed the action to the district court.

In February 1995, FDIC moved for summary judgment on the counterclaim. The district court granted defendants leave to amend their counterclaim for the limited purpose of showing that the breach of contract and negligent misrepresentation claims related to an agreement separate from the Loan, avoiding the bar of D'Oench, Duhme & Co., Inc. v. FDIC, 315 U.S. 447 (1942), and 12 U.S.C. § 1823(e).[2] The amended counterclaim realleged those claims as Counts I and II and renumbered the negligence claim as Count III. It also asserted two new counts: infliction of emotional distress (Count IV) and violation of

_____

[1] For ease of reference, the allowance of the claim against Kooyomjian and the judgment against DiCicco are referred to as the Loan.

[2] 12 U.S.C. § 1823(e) provides, in pertinent part: "No agreement which tends to diminish or defeat the interest of [FDIC] in any asset acquired by it . . . as receiver of any insured depository institution, shall be valid against [FDIC] unless such agreement--(1) is in writing . . . and (4) has been, continuously, from the time of its execution, an official record of the depository institution."

-4-

Massachusetts General Laws, Chapter 93A (Count V). On August 12, 1996, the district court determined that the amended counterclaim did not cure the § 1823(e) defect and granted partial summary judgment on Counts I and II. The court struck Counts IV and V as exceeding the scope of the leave to amend. Thus, only Count III, the negligence claim, remained.

In October 1997, FDIC determined that the claims of Eastland's unsecured creditors could not be satisfied out of Eastland's receivership assets and were therefore worthless. See 62 Fed. Reg. 58,732 (1997). Because defendants would be unsecured creditors if they were to prevail on the negligence claim, FDIC moved for summary judgment on Count III on prudential mootness grounds. In response, defendants contended for the first time that Count III sought to reduce their liability on the Loan under the doctrine of recoupment. The court denied FDIC's motion in May 1998.

FDIC then confirmed to the court that the Loan had been sold to Fleet pursuant to the P & A Agreement and filed a renewed motion for summary judgment on the ground that recoupment was not an available remedy. On June 16, 1999, the district court granted FDIC's motion, holding that recoupment was unavailable because FDIC had sold the asset against which recoupment was sought and that in light of FDIC's worthlessness determination the claim, even if otherwise successful, was barred by the doctrine of prudential mootness.

On appeal, defendants contend that the district court erred in granting summary judgment on their negligence claim because, under the terms of the P & A Agreement, their liability on the Loan was never transferred to Fleet. Additionally, they argue that the district court erred by: (1) denying their Rule 56(f) request to conduct additional discovery; (2) dismissing counts I and II of the amended counterclaim; (3) striking Counts IV and V of the amended counterclaim; (4) failing to strike FDIC's fourth successive motion for summary judgment; and (5) denying their motion for attorney's fees.

**DISCUSSION**

## I. THE NEGLIGENCE CLAIM

### A. <u>Standard of Review</u>

We review the district court's grant of summary judgment de novo, construing the record in the light most favorable to the nonmoving defendants and resolving all reasonable inferences in their favor. See <u>Houlton Citizens' Coalition</u> v. <u>Town of Houlton</u>, 175 F.3d 178, 184 (1st Cir. 1999).

### B. <u>Recoupment</u>

Defendants' negligence claim alleged that after it took possession of the property, Eastland negligently managed the Project, impeding sales of condominium units and thereby increasing their liability on the Loan. The district court concluded that recoupment

was not available because FDIC no longer owned the Loan against which recoupment was sought.

Recoupment "allows a defendant to 'defend' against a claim by asserting--up to the amount of the claim--the defendant's own claim against the plaintiff growing out of the same transaction." Bolduc v. Beal Bank, SSB, 167 F.3d 667, 672 (1st Cir. 1999). "[B]oth the primary damage claim and the claim in recoupment must arise out of the same transaction and involve the same litigants." Id. n.4, citing 6 Wright, Miller & Kane, Federal Practice and Procedure § 1401 (2d ed. 1990). Thus, if FDIC no longer holds the primary damage claim, i.e., the Loan, defendants' recoupment argument fails. See Nashville Lodging Co. v. Resolution Trust Corp., 59 F.3d 236, 247 (D.C. Cir. 1995) (rejecting recoupment claim against receiver where receiver had sold asset against which recoupment was sought).

Defendants do not dispute that the P & A Agreement transferred to Fleet FDIC's interest in "loans" as defined in the P & A Agreement. But they contend that the Loan fell within an exception for loans that were "in-substance foreclosure status." To qualify under that exception, the Loan had to be one "the proceeds for repayment [of which] can be expected to come only from the operation or sale of the collateral." The district judge found, and we agree, that the exception did not apply; because the collateral for the Loan (the Project) had been sold at foreclosure two years before Eastland failed,

at the time of the P & A Agreement repayment could not be expected to come from the sale of the collateral.

Defendants argue for the first time on appeal that even if the Loan was assigned to Fleet, FDIC retained an interest in it because the P & A Agreement provided that FDIC was entitled to a share of the net recovery of certain assets assigned to Fleet. We decline to consider this argument. It is a "bedrock rule of appellate practice that . . . matters not raised in the trial court cannot be hawked for the first time on appeal." Malave v. Carney Hosp., 170 F.3d 217, 222 (1st Cir. 1999).

Finally, defendants assert that FDIC should be estopped from arguing that the Loan was assigned to Fleet because in its March 1993 notice of removal of this action FDIC stated:

> The claim asserted herein by Eastland is an asset formerly of Eastland retained by the FDIC as Receiver. The FDIC as Receiver is, therefore, the real party in interest to this civil action, having succeeded thereto by operation of law, and it has filed herewith a motion to be substituted for Eastland in this action.

Defendants do not claim that they were misled by this statement or that they somehow relied on it to their detriment. See Law v. Ernst & Young, 956 F.2d 364, 368 (1st Cir. 1992). Indeed, throughout this litigation defendants contended that FDIC had no interest in the Loan. Accordingly, we reject this argument as well.

We affirm the district court's determination that the Loan was assigned to Fleet.  Because the primary claim and the recoupment claim do not involve the same parties, recoupment was not available.  See Bolduc, 167 F.3d at 672 n.4; Nashville Lodging, 59 F.3d at 247.

### C.  Mootness

The district court further held that the doctrine of prudential mootness bars defendants' claim.  Under Article III of the United States Constitution, federal courts have jurisdiction to decide only actual cases or controversies.  See U.S. Const. art. III.  To satisfy the case or controversy requirement, the counterclaimants "must have suffered some actual injury that can be redressed by a favorable judicial decision."  Iron Arrow Honor Soc'y v. Heckler, 464 U.S. 67, 70 (1983) (emphasis added).  The FDIC's worthlessness determination is unchallenged and, in the absence of a recoupment remedy, precludes any relief for defendants even it they were successful on their negligence claim and obtained a favorable judgment.  The district court therefore properly granted summary judgment on the negligence claim.  See Adams v. Resolution Trust Corp., 927 F.2d 348, 354 (8th Cir. 1991); 281-300 Joint Venture v. Onion, 938 F.2d 35, 38 (5th  Cir. 1991).

## II.  OTHER ASSIGNMENTS OF ERROR

### A.  Denial of Defendants' Rule 56(f) Motion

The district court denied defendants' Rule 56(f) request to conduct additional discovery into the ownership of the Loan after FDIC

produced the P & A Agreement.  We review the district court's denial of a Rule 56(f) request for abuse of discretion.  See Morrissey v. Boston Five Cents Sav. Bank, 54 F.3d 27, 35 (1st Cir. 1995).

Prior to making their Rule 56(f) request, defendants had obtained the P & A Agreement, which established that the Loan was assigned to Fleet.  They had received FDIC's written responses to their interrogatories about the assignment provisions of the P & A Agreement.  FDIC produced affidavits from responsible officers at FDIC and Fleet explaining the assignment of the Loan to Fleet.  Defendants have not shown that additional discovery would have aided their claim.  The district court did not abuse its discretion in denying a Rule 56(f) request that would have further delayed a nine year old case on a matter that would not have benefitted from additional discovery.

## B.  **Dismissal of Counts I and II**

Defendants next argue that the district court erred in relying on D'Oench to grant summary judgment on Counts I and II.  This argument is without merit.  The court expressly declined to decide whether Counts I and II were barred by D'Oench, holding instead that they were barred by 12 U.S.C. § 1283(e).

## C.  **Striking of Counts IV and IV**

Defendants challenge the district court's striking of  Counts IV and V of their amended counterclaim, in effect denying them leave to add those counts.  We review a denial of leave to amend for abuse of

discretion.  See Cigna Fire Underwriters Co. v. MacDonald & Johnson, Inc., 86 F.3d 1260, 1268 (1st Cir. 1996).

After FDIC had answered the original counterclaim, the district court granted defendants leave to amend for the limited purpose of showing that Counts I-III were not barred by the D'Oench doctrine or 12 U.S.C. § 1823(e).  However, in addition to clarifying Counts I-III, the amended counterclaim added two new theories of recovery, Count IV (infliction of emotional distress) and Count V (violation of Massachusetts General Laws, Chapter 93A).  In the absence of leave of court or FDIC's consent, see Fed. R. Civ. P. 15(a), those counts were properly struck.  The district court invited defendants to seek leave to assert additional nonfutile claims but they did not avail themselves of the opportunity.  The district court did not abuse its discretion by striking Counts IV and V.

### D.   FDIC's Fourth Summary Judgment Motion

Defendants contend that the district court abused its discretion in denying their motion to strike FDIC's fourth motion for summary judgment, the second motion directed at Count III of the amended counterclaim.  We review the denial of such a motion for abuse of discretion.  See, e.g., A.M. Capen's Co., Inc. v. American Trading and Prod. Corp., 202 F.3d 469, 472 n.4 (1st Cir. 2000) (trial judge's case management decisions are reviewed for abuse of discretion).

-11-

The tortuous history of these proceedings helps explain the course of these motions. FDIC filed its first motion for lack of subject matter jurisdiction because defendants had not filed the requisite claims. The district court allowed defendants to establish jurisdiction by exhausting the claims procedure and denied the motion. Next, FDIC moved for summary judgment on the basis of 12 U.S.C. § 1823(e). Because Counts I and II were clearly barred, those counts were dismissed, leaving only Count III.

After the FDIC made its worthlessness determination, it moved for summary judgment on Count III. In response, defendants first asserted their recoupment theory. The district court initially denied the motion on that ground but after further proceedings and a renewed motion for summary judgment changed its ruling and granted the motion.

Each of FDIC's motions reflected material changes in the posture of this litigation and was grounded on meritorious contentions. The district court did not abuse its discretion when it entertained FDIC's final motion for summary judgment.

### E. <u>Denial of Attorney's Fees</u>

We review the district court's denial of defendants' petition for attorney's fees for abuse of discretion. See <u>Maynard</u> v. <u>CIA</u>, 986 F.2d 547, 567 (1st Cir. 1993).

Defendants claim to be entitled to attorney's fees on the ground that FDIC's "successive summary judgment motions, asserting new

grounds after prior arguments fail, caused [them] unnecessary burden and expense." As previously shown, however, each motion was properly grounded and reflected a material change of circumstances. Moreover, defendants have not shown how FDIC's belated disclosure of the assignment of the Loan increased the burden or expense on defendants. The district court did not abuse its discretion in denying the request for fees.

## CONCLUSION

For the foregoing reasons, the judgment is affirmed.

**AFFIRMED.**