**Not For Publication in West's Federal Reporter**
**Citation Limited Pursuant to 1st Cir. Loc. R. 32.3**

# United States Court of Appeals
## For the First Circuit

No. 04-1665

BENJAMÍN MOULIERT-VIDAL, et al.,

Plaintiffs, Appellants,

v.

JUAN ANTONIO FLORES-GALARZA & ROSALIA NIEVES,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Salvador E. Casellas, U.S. District Judge]

Before

Boudin, <u>Chief Judge</u>,
Lipez, <u>Circuit Judge</u>,
and Schwarzer,[*] <u>Senior District Judge</u>.

Francisco R. González for appellants.
Luis Sánchez Betances, with whom Sánchez-Betances & Sifre,
P.S.C. was on brief, for appellees.

January 12, 2006

_____

[*]Of the Northern District of California, sitting by designation.

**LIPEZ, <u>Circuit Judge</u>**. The plaintiffs, twenty-four named employees of the Puerto Rico Department of the Treasury (PRDT) and an organization claiming to represent them, brought suit in the district court, alleging that they had been discriminated against at work because of their political views. After lengthy discovery and several extensions of time, the district court entered summary judgment for the defendants on a motion that it considered unopposed. The plaintiffs argue on appeal that they were denied an opportunity to depose a third-party witness wrongfully and that the district court should have allowed them more time to prepare and file an opposition to summary judgment.[2] We affirm.

## I.

A member of the New Progressive Party (NPP) occupied the Puerto Rico governorship from 1993 to 2001. In 2001, a Popular Democratic Party (PDP) member became governor. The plaintiffs, who are members of or otherwise favor the NPP, filed suit in January 2002. Their claims, though not entirely uniform, consisted largely of allegations that they had been stripped of job functions, bonuses, and perquisites after the 2000 election, in favor of employees sympathetic to the PDP.

In their complaint, the plaintiffs promised a class action that would involve 300 similarly-situated employees.

---

[1]The organization does not appeal the judgment against it. Nor do four of the individual plaintiffs.

However, the plaintiffs never sought class certification and never produced the additional 276 aggrieved individuals. Similarly, the named plaintiffs included an organization called "Asociación de Empleados del Departamento de Hacienda por la Democracia." The plaintiffs never produced any evidence pertaining to the organization, and the district court ultimately remarked that it was "not even positive that [the organization] exists."

Discovery was supervised largely by a magistrate judge. The materials produced were massive, supporting a summary judgment record 3500 pages long.[3] The defendants arranged for several political officials to be produced for depositions. Nonetheless, the plaintiffs were unable to schedule the deposition of a witness named María del Carmen Betancourt-Vázquez, Assistant Secretary for the Human Resources Area at PRDT.

The defendants had notified the plaintiffs early in the discovery process that Betancourt-Vázquez had refused to be deposed unless subpoenaed, and the plaintiffs apparently attempted to subpoena her for a deposition several times. The parties dispute exactly what happened. According to the plaintiffs, Betancourt-Vázquez avoided attempts to subpoena her, going so far as to hide from a process server. But the plaintiffs did manage to serve Betancourt-Vázquez with a subpoena two weeks after the discovery

---

[2]If the plaintiffs' late filed oppositions to summary judgment are included in the count, the record swells past 6500 pages.

-3-

period had concluded, shortly before the defendants' motion for summary judgment was to be filed. The magistrate judge granted the defendants' motion to quash that subpoena as untimely.

The defendants moved for summary judgment on May 12, 2003. The roughly 3000 pages of evidence that the defendants arrayed in support of their motion included an eleven-page declaration by Betancourt-Vázquez. Her declaration consisted mostly of a summary of the personnel records of the plaintiffs, which tended to show that none of them had suffered termination or reduction in status since the election.

The plaintiffs argued that without deposing Betancourt-Vázquez they could not adequately oppose the motion for summary judgment. They have maintained this position adamantly. The plaintiffs moved pursuant to Fed. R. Civ. P. 56(f) to arrange a deposition of Betancourt-Vázquez. The defendants objected. The district court suggested that the parties "amicably and professionally resolve" their dispute "and promptly schedule the deposition of" Betancourt-Vázquez. Nonetheless, the disagreement between the parties persisted, and the district court referred the matter to the magistrate judge. The magistrate judge concluded that no further discovery was warranted.[4]

---

[3]We reject the plaintiffs' assertion that the magistrate judge somehow lacked authority to resolve the matter as he did.

-4-

Now angry about their continuing inability to depose Betancourt-Vázquez, the plaintiffs asked the district court to reverse the magistrate judge's decision and to allow an additional 120 days to oppose summary judgment. The district court refused both requests. Nearly a full month later, the plaintiffs attempted to appeal the district court's order. We denied permission to bring the appeal.

Perhaps distracted by the Betancourt-Vázquez discovery dispute, the plaintiffs failed to file a timely opposition to the defendants' summary judgment motion despite a series of extensions running roughly four months beyond the deadline provided by the local rules. Time actually ran out on the plaintiffs twice. Acting on the plaintiffs' request, the district court had allowed the plaintiffs nearly 60 days to oppose summary judgment. (The local rules provided a fifteen-day deadline.) The magistrate judge refused the plaintiffs' request to extend the deadline further. But in July, after the 60-day deadline passed without word from the plaintiffs, the defendants, in an apparent effort to establish a firm final deadline for the plaintiffs' response, essentially requested a second extension on the plaintiffs' behalf.[5] The district court then granted the plaintiffs an additional 45 days, until the end of August, to oppose summary judgment.

---

[4]The district court later noted this oddity in rejecting the plaintiffs' contention in their motion for reconsideration that they had filed timely requests for extensions of time.

When the August deadline neared, the plaintiffs requested an additional 40 days from the magistrate judge,[6] who granted the request, but limited the extension to twenty days and warned that no further extensions would be allowed. After the twenty days expired, the plaintiffs notified the court that they would need still more time "to begin filing" their opposition. The plaintiffs ultimately submitted what the district court termed a "piecemeal opposition" to summary judgment; it arrived in installments commencing two weeks after the final deadline for submission and continuing for two and a half months thereafter.

Citing the plaintiffs' untimeliness and "blatant disregard to the Court's case management orders,"[7] the district court decided to consider the defendants' opposition to summary judgment as unopposed. Still, as required by Rule 56, the district court reviewed each of the plaintiffs' claims, assessing separately how the evidence already in the summary judgment record related to each individual plaintiff. See Fed. R. Civ. P. 56(e) ("If the

---

[5]Accompanying the motion was the plaintiffs' representation that they had been told by one of the defendants' lawyers that "he was resigning the case because the defendants wanted to hide information." The plaintiffs repeated the same allegation at oral argument before us. However, as the record reveals, the lawyer in question submitted a sworn declaration, in response to the plaintiffs' allegations, denying any such statement.

[6]In addition to twice missing the deadline to oppose summary judgment, the plaintiffs previously had been asked to show cause why they should not be sanctioned for failing to appear at a scheduled conference with the magistrate judge.

adverse party does not so respond, summary judgment, _if appropriate_, shall be entered against the adverse party.") (emphasis added); Adickes v. S.H. Kress & Co., 398 U.S. 144, 159-60 (1970). The court concluded that the plaintiffs had produced little more than "bare, boilerplate and conclusory allegations unsupported by any specific facts," and that their case fell short on a number of grounds. The court focused its analysis on a threshold point: because the plaintiffs were maintained in "their official designated post[s]," kept the "same level and salary," and suffered "no changes in rank," the plaintiffs had failed to produce evidence that they had "suffered a 'constitutionally significant burden' capable of giving rise to relief." Mouliert Vidal v. Flores Galarza, Civil No. 02-1101 at 7, 23 (D.P.R. 2004) (quoting Agosto-de-Feliciano v. Aponte-Roque, 889 F.2d 1209, 1216-18 (1st Cir. 1989)). The plaintiffs' efforts to seek relief from judgment were unsuccessful, and this appeal followed.

## II.

The plaintiffs appear to raise four issues on appeal: whether the district court could permissibly deny their Rule 56(f) motion to depose Betancourt-Vázquez; whether the district court could disregard their late-arriving oppositions to summary judgment; whether the district court should have granted relief pursuant to Fed. R. Civ. P. 60(b)(3) on account of the defendants' unwillingness or inability to produce Betancourt-Vázquez for a

deposition; and, assuming that the summary judgment motion should not have been considered unopposed and that the district court should have considered the late submissions in opposition to summary judgment, whether the defendants' motion for summary judgment was granted properly. Because we disagree with the plaintiffs on the first, second, and third issues, we need not decide the fourth.

## A. The Rule 56(f) Motion

Our review of a denial of a Rule 56(f) motion recognizes the "broad . . . considerable discretion" of the district court over such matters. Ayala-Gerena v. Bristol Myers-Squibb Co., 95 F.3d 86, 91 (1st Cir. 1996). We reverse denials of Rule 56(f) motions "only upon a clear showing of manifest injustice, that is, where the lower court's discovery order was plainly wrong and resulted in substantial prejudice to the aggrieved party." Filiatrault v. Comverse Tech. Inc., 275 F.3d 131, 137-38 (1st Cir. 2001). The plaintiffs have made no such showing.

Rule 56(f) allows, in certain circumstances, for supplemental discovery after a motion for summary judgment has been filed. But, while "district courts should construe Rule 56(f) motions generously," discovery pursuant to Rule 56(f) is not granted as a matter of course. Ayala-Gerena, 95 F.3d at 92. As we have explained:

> To benefit from the protections of Rule 56(f),
> a litigant ordinarily must furnish the nisi

> prius court with a timely statement -- if not by affidavit, then in some other authoritative manner -- that (i) explains his or her current inability to adduce the facts essential to filing an opposition, (ii) provides a plausible basis for believing that the sought-after facts can be assembled within a reasonable time, and (iii) indicates how those facts would influence the outcome of the pending summary judgment motion.

Velez v. Awning Windows, Inc., 375 F.3d 35, 40 (1st Cir 2004).  In addition, the party must "set forth good cause to explain the movant's failure to have conducted the desired discovery at an earlier date."  Massachusetts School of Law at Andover, Inc. v. American Bar Ass'n, 142 F.3d 26, 44 (1st Cir. 1998).

Even upon submission of the required materials, the district court is entitled to refuse a Rule 56(f) motion if it concludes that the party opposing summary judgment is unlikely to garner useful evidence from supplemental discovery, especially when the discovery requested would further delay a long-pending case. See FDIC v. Kooyomjian, 220 F.3d 10, 15 (1st Cir. 2000); Greebel v. FTP Software, Inc., 194 F.3d 185, 202 n.15 (1st Cir. 1999); see also Fennell v. First Step Designs, Ltd., 83 F.3d 526, 532 (1st Cir. 1996) (holding that district court could balance potential benefits of Rule 56(f) discovery against the "costs, burdens, and delays that the proposed discovery entailed").  Similarly, the district court may refuse to authorize Rule 56(f) discovery if the information sought will not be pertinent to the theory of law

advanced by the summary judgment motion.  Massachusetts School of Law at Andover, Inc., 142 F.3d at 44-45.

While the plaintiffs' several motions on the subject insist otherwise, the plaintiffs have not demonstrated why they needed to delay the proceedings in order to depose Betancourt-Vázquez.  Betancourt-Vázquez's declaration comprises a tiny portion of the summary judgment record and says almost nothing that the plaintiffs could not have controverted without further discovery. Mostly, Betancourt-Vázquez summarized the plaintiffs' personnel files.  The plaintiffs already had access to these files.  In short, the plaintiffs failed to show that anything discovered by virtue of a deposition of Betancourt-Vázquez "would [have] influence[d] the outcome of the pending summary judgment motion." Velez, 375 F.3d at 40.  Consequently, we cannot say that the district court abused its discretion in denying the plaintiffs' request for Rule 56(f) relief.

**B.  Treating the Summary Judgment Motion as Unopposed**

Our review of the district court's reaction to the plaintiffs' untimeliness is, again, limited.  We have recognized that the district court has wide discretion to manage its caseload by setting deadlines for filings and holding parties to those deadlines.  "In the absence of a manifest abuse of discretion, . . . we will not interfere with a district court's reasoned refusal to grant incremental enlargements of time."  Mendez v. Banco Popular

de P.R., 900 F.2d 4, 7 (1st Cir 1990).  When a party fails to meet a reasonable deadline for opposing a motion for summary judgment, the district court may treat the summary judgment motion as unopposed, and deem admitted all facts presented as uncontested by the movant.  "This court has held repeatedly that the district court in Puerto Rico is justified in holding one party's submitted uncontested facts to be admitted when the other party fails to file oppositions in compliance with the local rules." Torres-Rosado v. Rotger-Sabat, 335 F.3d 1, 4 (1st Cir. 2003).

The plaintiffs received extensions running nearly four months.  They failed twice, as the district court pointed out, to file for an extension of time before the deadline to oppose summary judgment passed.  Further, the plaintiffs' opposition dribbled into court over the course of two and a half months, not arriving in complete form until a full three months after the court's final deadline -- seven months after the defendants' motion for summary judgment was filed.  This record supports the district court's conclusion that the plaintiffs' disregard for the court's deadlines was "blatant" and inexcusable. See Cordero-Soto v. Island Finance, Inc., 418 F.3d 114, 118 (1st Cir. 2005) (holding no abuse of discretion in district court's denial of request for extension of time and treatment of summary judgment motion as unopposed, after party's repeated failure to comply with deadlines).

We are not swayed by the plaintiffs' suggestion that they should have been allowed extra time to oppose summary judgment because they were occupied by the Rule 56(f) matter. Once their motion to depose Betancourt-Vázquez was denied, the plaintiffs should have gotten back to the task at hand. Instead, they wasted time on an ill-conceived attempt to file an interlocutory appeal. As we quickly informed the plaintiffs, they should not have expected to secure an interlocutory appeal of the district court's discretionary ruling on a discovery matter. See, e.g., United States v. Kouri-Perez, 187 F.3d 1, 13 (1st Cir. 1999) (explaining reluctance of court of appeals to entertain interlocutory appeals from discretionary rulings of district court that can be challenged on direct appeal). The district court was not required to save the plaintiffs from the consequences of their futile efforts.

## C.  Rule 60(b)(3)

The plaintiffs also appear to seek appellate review of the denial of relief pursuant to Rule 60(b)(3), which allows "[o]n motion" for the district court to "relieve a party . . . from a final judgment" on account of "fraud . . . , misrepresentation, or other misconduct of an adverse party." The plaintiffs' contention is that such relief should have been granted because of the defendants' unwillingness to produce Betancourt-Vázquez for a deposition, which they allege constituted misconduct by an adverse party. We certainly do not condone any effort by the defendants to

-12-

somehow hide Betancourt-Vázquez, if any such conduct actually occurred. But we reject the plaintiffs' request for appellate review of any Rule 60(b)(3) claim because they do not suggest how they have preserved an appeal on Rule 60(b)(3) grounds.

The plaintiffs noticed an appeal both of the final judgment and of the denial of their "motion for reconsideration." Neither appeal encompasses Rule 60(b)(3) relief. The plaintiffs' "motion for reconsideration" never argued in any understandable fashion for Rule 60(b)(3) relief. Rather, the plaintiffs asked the district court to relieve them from the judgment on account of "excusable neglect," pursuant to Rule 60(b)(1). Having failed to include any direct request for Rule 60(b)(3) relief in their motion for reconsideration, the plaintiffs have waived any right to ask for such relief on appeal from the denial of that motion. See Larch v. Mansfield Mun. Elec. Dep't, 272 F.3d 63, 76 (1st Cir. 2001) (holding that failure to raise issue at district court forecloses party from raising same issue on appeal). See also Toscano v. Chandris, S.A., 934 F.2d 383, 386-87 (1st Cir. 1991); Com. of Puerto Rico v. S.S. Zoe Colocotroni, 601 F.2d 39, 42 (1st Cir. 1979) (discussing procedure for seeking Rule 60(b) relief while a case is on appeal).

Nor does the plaintiffs' appeal from the final judgment itself allow us to entertain their request for Rule 60(b)(3) relief. Our review of the record reveals that the plaintiffs did

-13-

make cursory reference to Rule 60(b)(3) in their motion, several months before the entry of final judgment, to stay the proceedings while they attempted an interlocutory appeal -- essentially a motion for more time to oppose summary judgment. But Rule 60(b)(3) relief was not available to the plaintiffs until entry of final judgment. Farr Man & Co. v. M/V Rozita, 903 F.2d 871, 874 (1st Cir. 1990) ("It is, by this time, well settled that Rule 60 applies only to final judgments.").

**D. Resolution of the Unopposed Summary Judgment Motion**

The plaintiffs suggest that the district court dismissed their case with prejudice as a sanction for their failure to timely oppose summary judgment. The district court did no such thing. Rather, the district court entered a twenty-four page opinion and order that discussed each of the plaintiffs' claims under the appropriate summary judgment standard, limiting the record to the evidence on file at the time that the period to oppose summary judgment expired. This is exactly what the district court was supposed to do. Cordero-Soto, 418 F.3d at 118.

The plaintiffs have provided no basis for granting them relief once we have affirmed the district court's decision to disregard their late-filed oppositions to summary judgment. They make no argument that, on the record considered by the district court, the defendants' motion for summary judgment should have been denied. Notably, they do not contend in their appellate brief that

-14-

the district court was incorrect in concluding, on the available summary judgment record, that none of the plaintiffs had suffered a constitutionally cognizable injury.  Consequently, any such argument is waived.  See Michelson v. Digital Financial Services, 167 F.3d 715, 721 n.2 (1999).  Therefore, we must conclude that the district court properly entered judgment for the defendants.

**Affirmed**.