# United States Court of Appeals
## For the First Circuit

Nos. 11-2113, 11-2433

FEDERAL DEPOSIT INSURANCE CORPORATION
AS RECEIVER FOR R-G PREMIER BANK OF PUERTO RICO,

Plaintiff, Appellee,

v.

DIGNO EMÉRITO ESTRADA-RIVERA; EDITH DELIA COLÓN-FELICIANO;
CONJUGAL PARTNERSHIP ESTRADA-COLÓN;
EMÉRITO ESTRADA RIVERA-ISUZU DE PUERTO RICO, INC.,

Defendants, Appellants.

APPEALS FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Gustavo A. Gelpí, U.S. District Judge]

Before

Torruella, Lipez, and Thompson, Circuit Judges.

Guillermo F. DeGuzmán, with whom DeGuzmán Law Offices was on brief, for appellants.
Kathleen V. Gunning, Counsel, Federal Deposit Insurance Corporation, with whom Colleen Boles, Assistant General Counsel, and Lawrence H. Richmond, Senior Counsel, were on brief, for appellee.

July 3, 2013

**LIPEZ, Circuit Judge**.  Appellants challenge the district court's grant of summary judgment for the Federal Deposit Insurance Corporation ("FDIC") in a collection action stemming from their default on a $700,000 loan.  They contend that their lending bank -- later taken over by the FDIC -- caused the default by failing to follow through on a promised loan to a third-party.  The district court also dismissed a counterclaim based on that contention for lack of subject matter jurisdiction.  Although we adopt a different rationale for disposing of the counterclaim, we affirm both of the court's rulings.[1]

**I.**

It is unnecessary to describe the financial transactions underlying this case in detail, as both issues on appeal are controlled by well established legal principles.  We thus briefly sketch the background of the dispute, with elaboration provided below as pertinent to our discussion.

In early 2008, appellant Digno Emérito Estrada-Rivera ("Estrada-Rivera") signed a loan agreement with R-G Premier Bank of Puerto Rico ("the Bank") for a $700,000 line of credit for his business, Emérito Estrada Rivera-Isuzu de Puerto Rico ("EER-IPR").  Less than a year later, Estrada-Rivera defaulted on the loan, and the Bank brought a collection action in commonwealth court against

---

[1] Appellants filed a separate appeal of each ruling, and the two actions were later consolidated.

the four appellants in this appeal: Estrada-Rivera, his wife (Edith Delia Colón-Feliciano), their conjugal partnership, and EER-IPR. In a counterclaim, appellants asserted that the Bank was responsible for the default because it had breached a financing agreement with an entity that was purchasing property from appellants for a shopping plaza project.  Appellants alleged that they were to receive some of the proceeds from that financing to complete the third party's purchase of appellants' property, and appellants would then have used those funds to pay their outstanding loan commitments with the Bank, including the line of credit. They asserted damages of "not less than" $50 million resulting from the Bank's breach.

The FDIC subsequently took over the Bank as receiver, removed the litigation to federal court, and eventually obtained summary judgment in its favor on the collection action.  The district court noted the absence of any dispute that the $700,000 debt was due and payable, and it found "nothing in the record that made Defendants' payment under the note conditional upon [the Bank]'s compliance with its obligation under the [third-party] financing agreement."  Hence, because "Defendants have breached their contractual obligations," the court granted summary judgment for the FDIC.  The court also dismissed appellants' counterclaim, finding a lack of subject-matter jurisdiction on the ground that appellants had not taken the steps necessary, within the required

time frame, to maintain an action against the FDIC.  See 12 U.S.C. § 1821(d)(6), (d)(13)(D).

Appellants raise two issues on appeal.  First, they contend that summary judgment was improperly granted on the collection action because factual disputes remain concerning the Bank's role in causing them to breach their loan agreement with the Bank and whether, as a result, appellants should be released from their obligations under that agreement.  Second, appellants argue that the district court erred in rejecting their counterclaim on jurisdictional grounds.  They assert that they met all applicable requirements for pursuing the claim and that, in any event, their action should not be barred because the FDIC gave them inadequate notice of the need to file a proof of claim.

We review an appeal from a grant of summary judgment de novo, Johnson v. Univ. of P.R., 714 F.3d 48, 52 (1st Cir. 2013), and likewise apply de novo review to the court's dismissal of the counterclaim for lack of subject-matter jurisdiction, Alphas Co. v. Dan Tudor & Sons Sales, Inc., 679 F.3d 35, 38 (1st Cir. 2012).  In considering the propriety of the district court's rulings, we are not limited to the rationales it adopted but may affirm its judgment on any ground supported by the record.  Miles v. Great N. Ins. Co., 634 F.3d 61, 65 n.5 (1st Cir. 2011).

## A. The Collection Action

Appellants attempt to demonstrate that summary judgment was improperly granted against them by highlighting factual disputes related to the financing that the Bank had agreed to provide for the shopping plaza project. They state that the Bank structured the deal so that final payment to appellants would be withheld until after the Bank released additional funds to the buyer, Empresas Cerromonte Corp. ("ECC"), for construction.[2] Appellants claim, however, that the Bank subsequently refused to disburse the additional monies, breaching its financing agreement with ECC along with a commitment made to appellants that they would receive full payment for their property within a year of the sale.[3]

Appellants thus assert that their default on the line of credit was attributable to the Bank's breach of both the ECC financing deal and its obligations to appellants themselves. They argue that a factfinder must evaluate their contention that the Bank's culpability overrides their own breach, and they insist that the district court would be authorized to modify their obligations under the line of credit if the Bank is found to have acted in bad faith. Hence, because further development of the facts may show that the Bank bears responsibility for their default, appellants

---

[2]    Appellants were therefore required to temporarily self-finance part of the purchase price.

[3]    Appellants state that the balance due was to be paid directly by the Bank to them from ECC's construction loan proceeds.

maintain that summary judgment for the FDIC on the collection claim was improper.

The problem for appellants is that, whatever the merits of their defense as a matter of contract or promissory estoppel, their contentions are unavailing against the FDIC. Enforcement against the FDIC of unwritten promises or agreements is barred by 12 U.S.C. § 1823(e)(1), which provides, in pertinent part:

> No agreement which tends to diminish or defeat the interest of the [FDIC] in any asset acquired by it . . . as receiver of any insured depository institution, shall be valid against the [FDIC] unless such agreement--
>
> (A) is in writing . . . [and]
>
> (D) has been, continuously, from the time of its execution, an official record of the depository institution.

See also D'Oench, Duhme & Co. v. FDIC, 315 U.S. 447 (1942) (establishing the common law "D'Oench doctrine," which "prevents plaintiffs from asserting as either a claim or defense against the FDIC oral agreements or 'arrangements,'" FDIC v. LeBlanc, 85 F.3d 815, 821 (1st Cir. 1996) (internal quotation marks omitted)); McCullough v. FDIC, 987 F.2d 870, 874 n.6 (1st Cir. 1993) (describing § 1823(e) as "D'Oench's statutory partner").

The district court found no written proof that appellants' obligation to repay the line of credit was contingent on ECC's independent financing agreement with the Bank, and appellants point to no such explicit documentation. Instead, they

rely on inferences to be drawn from the collection of documents executed by the Bank, ECC and themselves in connection with the sale of appellants' property to ECC. Appellants depict an arrangement in which all parties understood that appellants' partial self-financing of the ECC purchase would be short-term and that the Bank would soon provide the additional funds enabling ECC to pay off that debt. But such a de facto arrangement, although plausible as alleged, is not enough. Section 1823(e)(1) protects the FDIC from facing precisely that kind of unrecorded understanding as a defense to a debt that is otherwise due and collectible. See, e.g., Beal Bank, SSB v. Pittorino, 177 F.3d 65, 68 (1st Cir. 1999); LeBlanc, 85 F.3d at 821.

Because appellants have not produced any written evidence that their obligation to pay the line-of-credit debt was conditioned on the Bank's provision of financing to ECC, and they do not contest that their debt is due and payable,[4] they have failed to identify a material fact affecting their obligation that remains in dispute. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) ("Only disputes over facts that might affect the

---

[4] Appellants assert that there is a factual dispute about the number and timing of the payments they made on the line of credit, but this argument is both undeveloped and unsupported by the evidence they cite. See App. at 112-116 (highlighting six payments, all of which were acknowledged by the FDIC). It is therefore waived. See Cruz v. Bristol-Myers Squibb Co., PR, 699 F.3d 563, 572 (1st Cir. 2012) (deeming waived a "woefully undeveloped" argument that was "not supported by reference to either legal authority or evidence in the record").

outcome of the suit under the governing law will properly preclude the entry of summary judgment."); Calero-Cerezo v. U.S. Dep't of Justice, 355 F.3d 6, 19 (1st Cir. 2004) ("[A] 'material fact' is one that has the potential of affecting the outcome of the case."). The district court therefore properly granted summary judgment in favor of the FDIC on the collection action.[5]

---

[5] For the first time on appeal, appellants argue summarily that neither Colón-Feliciano nor EER-IPR may be held responsible for the $700,000 debt because only Estrada-Rivera signed the promissory note and other loan documents.  The argument is untimely, and thus forfeited.  See Randall v. Laconia, N.H., 679 F.3d 1, 5 (1st Cir. 2012) ("[Appellant's] perfunctory treatment, as well as his raising this argument for the first time on appeal, waives the issue.").

Moreover, appellants have repeatedly acknowledged EER-IPR's responsibility for the debt.  For example, their opposition to the motion for summary judgment states that "[t]he loan . . . subject of this litigation, was granted to EER-IPR, but under the name of Mr. Digno Emérito Estrada Rivera at the behest of [the] Bank."  The opposition also states that "R-G Premier Bank effectively impeded EER-IPR from fulfilling its payment obligations under the credit facility subject of this lawsuit."  Appellants' Opposing Statement of Material Facts reports that all payments on the loan were made by EER-IPR.

Colón-Feliciano's liability arises from her status as Estrada-Rivera's wife.  See P.R. Laws Ann. tit. 31, § 3661 (stating that "[a]ll debts and obligations contracted during the marriage by either of the spouses" are "[c]hargeable to the community property"); see also Dyno Nobel, Inc. v. Amotech Corp., 959 F. Supp. 109, 113, 115 (D.P.R. 1997) (recognizing exceptions, inapplicable here, to liability for conjugal partnership, and noting that wife and conjugal partnership must be included as parties for judgment to be executed against them).  In addition, appellants stated in their counterclaim that EER-IPR was controlled by Estrada-Rivera, Colón-Feliciano, and their conjugal partnership.

## B. Counterclaim

The district court dismissed the counterclaim on the ground that appellants failed to follow the mandated administrative process for maintaining a court action against the FDIC. Although they filed a timely proof of claim with the agency, the district court found that they took no further action within the sixty-day period after the FDIC disallowed the claim. See 12 U.S.C. § 1821(d)(6) (providing that disallowance will be final unless claimant requests administrative review, or files or continues an action in district court, within sixty days of FDIC notice of disallowance). The court held that their inaction divested the federal courts of jurisdiction to consider the claim. See id. § 1821(d)(13)(D); see also Acosta-Ramírez v. Banco Popular de P.R., 712 F.3d 14, 19-20 (1st Cir. 2013) (describing the governing administrative claims process).

We find it unnecessary to delve into the parties' arguments about appellants' compliance, or lack thereof, with the statutory claims procedures. About a week after the district court issued its ruling on the counterclaim, the FDIC published notice of its determination that the Bank has insufficient assets to make any distribution on the claims of general unsecured creditors, a category that would include appellants if they prevailed on their counterclaim. The FDIC stated that, accordingly, "all such claims, asserted or unasserted, will recover nothing and have no value."

-9-

See Determination of Insufficient Assets To Satisfy Claims Against Financial Institution in Receivership, 76 Fed. Reg. 50733-01, 2011 WL 3562786 (Aug. 16, 2011). The FDIC's no-value determination, unchallenged by appellants, "precludes any relief for [claimants] even i[f] they . . . obtained a favorable judgment" on their claim. FDIC v. Kooyomjian, 220 F.3d 10, 15 (1st Cir. 2000). Without a redressable claim, appellants cannot satisfy the constitutional case or controversy requirement. Id. (noting that the case or controversy requirement means that claimants must have "'suffered some actual injury that can be redressed by a favorable judicial decision.'" (quoting Iron Arrow Honor Soc'y v. Heckler, 464 U.S. 67, 70 (1983))).

Moreover, as the FDIC observes, even if "some theoretical case or controversy exists," dismissal of the counterclaim would still be warranted as a matter of prudential mootness. Numerous courts have reached that conclusion in equivalent circumstances. See, e.g., Henrichs v. Valley View Dev., 474 F.3d 609, 615 (9th Cir. 2007); Maher v. FDIC, 441 F.3d 522, 525-26 (7th Cir. 2006); First Ind. Fed. Sav. Bank v. FDIC, 964 F.2d 503, 507 (5th Cir. 1992); Adams v. Resolution Trust Corp., 927 F.2d 348, 354 (8th Cir. 1991); Wallis v. IndyMac Fed. Bank, 717 F. Supp. 2d 1195, 1198-1200 (W.D. Wash. 2010).

The district court therefore properly dismissed appellants' counterclaim.

## II.

For the reasons we have explained, the district court properly abbreviated this case. Appellants' attempt to escape summary judgment on the collection action by positing a factual dispute over the Bank's conduct founders on the requirements of section 1823(e). Their effort to revive the dismissed counterclaim is blocked by the FDIC's determination that the Bank has insufficient assets to pay any judgment in favor of general unsecured creditors. We therefore affirm the district court's judgments.

So ordered.